Entered on Docket May 18, 2023

Below is a Memorandum Decision of the Court.

_____
**Mary Jo Heston**
**U.S. Bankruptcy Judge**
(Dated as of Entered on Docket date above)

_____

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br>Breanna Dee Madrid,<br>                 Debtor. | Case No. 19-42260-MJH<br><br>**Memorandum Decision on Trustee's Motion to Modify Chapter 13 Plan** |

This matter came before the Court on March 30, 2023, on the Chapter 13 Trustee, Michael Malaier's ("Trustee"), Motion to Modify Chapter 13 Plan ("Motion"). The Trustee filed the Motion on March 8, 2023, seeking an order modifying debtor Breanna Dee Madrid's ("Debtor") confirmed plan pursuant to 11 U.S.C. § 1329(a)[1] or alternatively, to dismiss the Debtor's case pursuant to § 1307(c). (ECF No. 41).

The Debtor filed a response opposing the Motion on March 23, 2023, and the Trustee filed a reply brief the following day. (ECF Nos. 42 and 43). The Court held a hearing on March 30, 2023, and took the parties' arguments under advisement. The Court having considered the arguments of counsel and pleadings in the record, hereby makes the following findings of fact and conclusions of law.

## I. BACKGROUND AND FINDINGS OF FACT

The Debtor filed her chapter 13 petition on July 10, 2019. (ECF No. 1). The Court confirmed the Debtor's chapter 13 plan on October 23, 2019. (ECF No. 27). The plan had

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

a 36-month applicable commitment period ("ACP"), disclosed a liquidation value of $0.00, and proposed to pay $0.00 to unsecured creditors. (ECF No. 22). Under the terms of the plan, the Debtor proposed to make monthly payments of $140.00 totaling $5,040.00.

In February 2022—during month 31 of the plan—the Debtor's mother died, and the Debtor became entitled to one-fifth of her mother's estate. (ECF No. 36, p. 4). The Debtor did not disclose the inheritance until five months later. *See id.* On September 30, 2022—during month 37 of the plan—the Debtor filed amended Schedules A/B and C wherein she disclosed the inheritance, assigned it a value of "Unknown," and claimed an exemption of $13,876.00 pursuant to § 522(d)(5). (ECF No. 36, p. 4 and 7).

On February 7, 2023, the Debtor informed the Trustee that her share of the inheritance totaled $71,852.00. (ECF Nos. 41 and 42). Based on the Debtor's representation of the total amount to be received, the Trustee calculated that the non-exempt value of the inheritance would be $57,976.00 after applying the Debtor's claimed exemption. (ECF No. 41). Filed unsecured claims total $24,891.52. *Id.*

In an email exchange on February 8, 2023, the Trustee, citing *In re Villegas*, 573 B.R. 844 (Bankr. W.D. Wash. 2017), advised the Debtor that she would either need to pay sufficient non-exempt proceeds from the inheritance to pay 100% of filed claims or that Debtor's plan would need to be modified to pay 100% of filed claims through ongoing plan payments. (ECF No. 41). On March 3, 2023, after multiple follow-up emails from the Trustee, the Debtor confirmed receipt of the inheritance and expressed that she did not intend to pay the non-exempt portion of the inheritance into the plan, nor did she intend to modify her plan to account for the non-exempt portion of the inheritance, which prompted the Trustee to file the Motion.

## II. Discussion and Conclusions of Law

The issue is whether the Court should grant the Trustee's Motion to modify the plan pursuant to § 1329(a) to increase payments to creditors and extend the life of the plan. The Court must decide whether the postconfirmation inheritance is property of the estate

and whether the Trustee is entitled to modify the plan in light of the inheritance under the provisions of § 1329. As the moving party, the Trustee bears the burden of proof to show facts supporting modification of the plan. *Max Recovery, Inc. v. Than (In re Than)*, 215 B.R. 430, 434 (9th Cir. BAP 1997).

**A. The inheritance is property of the estate pursuant to § 1306(a)(1).**

The first issue is whether the Debtor's inheritance is property of the estate under § 1306(a)(1).[2] The parties do not dispute that the Debtor became entitled to the inheritance during month 31 of the plan. Instead, the parties dispute the interplay between § 541(a)(5) and § 1306.

In relevant part, § 541(a)(5) provides:

> (a) The commencement of a case under . . . this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> . . .
>
> (5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, *and that the debtor acquires or becomes entitled to acquire within 180 days after such date—*
>
> (A) by bequest, devise, *or inheritance*; . . .

(Emphasis added).

Section 1306(a)(1) provides:

> (a) Property of the estate includes, *in addition to the property specified in section 541* of this title
>
> (1) *all property of the kind specified in such section* that the debtor acquires after the commencement of the case *but before the case is closed, dismissed, or converted* . . . .

(Emphasis added).

---

[2] In her response to the Trustee's Motion, the Debtor stated that she "concedes that the inheritance is property of the estate." (ECF No. 42, p.4). However, at the March 30, 2023 hearing, the Debtor appeared to argue that the inheritance is not property of the estate. Therefore, the Court will address the argument.

The interplay of § 541 and § 1306 raises the question of whether § 1306 extends the timeframe under which inheritances become property of a chapter 13 bankruptcy estate beyond 180 days or whether § 541 sets a fixed timeframe for the receipt of an inheritance under any chapter of the Code. Courts addressing this question have reached differing conclusions. *Compare Carroll v. Logan*, 735 F.3d 147, 152 (4th Cir. 2013) (holding § 1306 extends timeframe set by § 541 beyond 180 days in chapter 13 cases), *and Dale v. Maney (In re Dale)*, 505 B.R. 8, 13 (9th Cir. BAP 2014) (same), *with In re Key*, 465 B.R. 709, 712 (Bankr. S.D. Ga. 2012) (holding § 1306 does not extend 180-day timeframe set by § 541).

The Debtor argues that pursuant to § 541(a)(5), property inherited after 180 days postpetition is not property of the estate in a chapter 13 case, notwithstanding § 1306. This argument has been rejected by the majority of courts. *See, e.g., Carroll*, 735 F.3d at 151 ("the overwhelming majority of courts . . . agree that § 1306 modifies the § 541 time period in Chapter 13 cases").

The Ninth Circuit Bankruptcy Appellate Panel ("BAP") discussed the interaction between § 541(a)(5)(A) and § 1306(a) in *In re Dale*. 505 B.R, at 11–12. The BAP agreed with the reasoning in *Carroll* and concluded that a postpetition inheritance acquired more than 180 days after the petition date becomes property of the estate under § 1306(a). In reaching its decision, the BAP quoted the following from *Carroll*:

> The statutes' plain language manifests Congress's intent to expand the estate for Chapter 13 purposes by capturing the types, or 'kind,' of property described in Section 541 (such as bequests, devises, and inheritances), but not the 180–day temporal restriction. This is because '[t]he kind of property is a distinct concept from the time at which the debtor's interest in the property was acquired.' And on its face, Section 1306(a) incorporates only the kind of property described in Section 541 into its expanded temporal framework.

*Dale*, 505 B.R. at 11–12 (quoting *Carroll*, 735 F.3d at 150) (internal citations omitted). The BAP further concluded that applying the restrictions of § 541(a)(5) would make § 1306(a) "lose all meaning." *Dale*, 505 B.R. at 12. Other courts within the Ninth Circuit

have similarly concluded that § 1306 modifies the § 541 time period.[3] This Court finds the BAP's decision in *Dale* to be persuasive. As the Debtor's case has not been closed, dismissed, or converted, the Court concludes that the Debtor's postpetition inheritance is property of the estate under § 1306(a)(1).

**B. The Trustee may seek modification of the Debtor's Plan.**

The second issue is whether, under the facts of this case, the Trustee may seek to modify the Debtor's confirmed plan to increase the distribution to unsecured creditors. Postconfirmation modifications are governed by § 1329. In relevant part, § 1329 provides:

> (a) At any time after confirmation of the plan *but before the completion of payments under such plan*, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to--
>
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> . . .
>
> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
>
> (b)(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.
>
> (c) A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

11 U.S.C. § 1329 (emphasis added).

Accordingly, the Court may approve a postconfirmation modification pursuant to § 1329 if the following three conditions are met: 1) the proposed modification modifies the plan in one of the ways specified in § 1329(a)(1)–(4); 2) the modification comports with the

---

[3] *See, e.g., In re Shay*, 553 B.R. 412 (Bankr. W.D. Wash. 2016); *In re Rankin*, 546 B.R. 861, 867 (Bankr. D. Mont. 2016); *In re Wirshing*, Case No. 13–60990, 2015 WL 3525061 (Bankr. D. Mont. June 3, 2015); *In re Johnson*, No. 19-00033-GS, 2020 WL 265914 (Bankr. D. Alaska Jan. 17, 2020).

provisions of the Code listed in § 1329(b)(1); and, 3) the modification does not result in a plan providing for payments longer than permitted by § 1329(c).

### 1. *The Debtor is equitably estopped from arguing that she has completed plan payments.*

The parties do not dispute that the Trustee's proposed modification seeks to increase the distribution to unsecured creditors. Instead, the Debtor contends that the Motion cannot be granted because it was filed after she made the last payment due under the plan and the Trustee has not established cause for an extension pursuant to § 1329(c). The Trustee argues that cause exists to extend the time for modification beyond the 36-month ACP because the Debtor did not timely comply with her duty to disclose the inheritance. The Trustee contends that had the Debtor timely disclosed her right to receive the inheritance, the Trustee would have been able to act during the 36-month ACP.

Estoppel is an equitable doctrine "invoked to avoid injustice in particular cases," with its hallmark being its flexible application. *Heckler v. Cmty. Health Servs. Crawford Cnty., Inc.*, 467 U.S. 51, 59, 104 S. Ct. 2218, 2223 (1984); *Hass v. Darigold Dairy Prod. Co.*, 751 F.2d 1096, 1100 (9th Cir. 1985). Under the doctrine of equitable estoppel, "a person may be precluded by his act or conduct, *or silence when it is his duty to speak*, from asserting a right which he otherwise would have had." *Jablon v. United States*, 657 F.2d 1064, 1068 (9th Cir. 1981) (quoting Black's Law Dictionary (5th ed. 1980)) (emphasis added); *see Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992) (affirming summary judgment based on estoppel when debtor failed to give required notification of existence of an asset).

A debtor has a duty to disclose postpetition assets specified under § 541(a)(5), which includes an inheritance. Rule 1007(h). If a debtor "becomes entitled to acquire any interest" in such an asset, the debtor is required to file a supplemental schedule "within 14 days after the information comes to the debtor's knowledge." *Id.* Additionally, a debtor

is required to immediately inform the trustee of "the location of real property in which the debtor has an interest and the name and address of every person holding money or property subject to the debtor's withdrawal or order if a schedule of property has not yet been filed pursuant to Rule 1007." Rule 4002(a)(3).

Here, the Debtor became entitled to the inheritance in February 2022. The Debtor did not file her amended Schedule A/B until September 30, 2022, well beyond the 14–day period provided for in Rule 1007(h), and she did not request permission from the Court to extend the deadline for filing her amended Schedule A/B. The Debtor argues that she was unaware of the need to disclose the inheritance until she received an email from her counsel on September 21, 2022, reminding her of the requirement to report receipt of property over $2,500. The Court rejects this argument.

The Debtor's confirmed plan states that "[t]he Debtor shall promptly notify the Trustee if the Debtor becomes entitled to receive a distribution of money or other property (*including, but not limited to,* bonuses, *inheritances*, tax refunds or any claim) with a value in excess of $2,500[.]" (ECF No. 22, p.5) (emphasis added). Although the Debtor appears to argue that she did not have actual knowledge of the requirement to disclose the inheritance until the September 2022 email, she—at the very least—had constructive knowledge of the requirements. The Debtor has been represented by experienced bankruptcy counsel since the commencement of this case. A person who has consulted with an attorney "can be charged with constructive knowledge of the law's requirements." *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1050 (9th Cir. 1987).

The benefits of bankruptcy come with burdens and duties. The Debtor's duty to disclose the anticipated inheritance arose in February 2022 when she was identified as having a beneficial interest in the inheritance—not upon receipt of the September 2022 reminder email. *See* § 1306(a)(1). The Debtor was required to disclose the inheritance when she became entitled to it in February 2022, which would have given the Trustee notice of the asset well before the time limitation for modification under § 1329(a) expired.

The failure to disclose the inheritance prevented the Trustee from being able to file the Motion before the Debtor made her last payment due under the plan. After the Debtor disclosed the inheritance, the Trustee acted diligently in communicating with the Debtor about the inheritance and promptly filed the Motion after the Debtor expressed her intent not to modify her plan.

The Court finds that it would be inequitable for the Debtor to advance an argument that the Motion is untimely based on her failure to disclose property of the Estate. Based on the Debtor's failure to timely disclose the inheritance until after the ACP, her failure to comply with the terms of her plan and the Rules, her delay in confirming receipt of the inheritance until after she remitted her final plan payment, and the Trustee's prompt filing of the Motion, the Court concludes that is appropriate for the Debtor to be equitably estopped from arguing that she has "completed payments under the plan."

### 2. *Increasing distribution would not run afoul of the best interest test.*

Section 1329(b)(1) incorporates §§ 1322(a)–(b), 1323(c), and 1325(a) into a proposed postconfirmation plan modification. Of these provisions, the parties' dispute centers around the liquidation analysis of § 1325(a)(4)—also known as the "best interest of the creditors test"—which requires that:

> the value, *as of the effective date of the plan*, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

§ 1325(a)(4) (emphasis added).

The liquidation analysis involves a hypothetical calculation of the estate to determine the distribution that unsecured creditors would receive if the estate was liquidated in a chapter 7 case. This analysis requires the comparison of two calculations: (1) the value as of the effective date that unsecured creditors are to receive under the plan, and (2) the value of property that would be distributed to unsecured creditors in a hypothetical liquidation under chapter 7.

### a. The effective date of the plan.

To properly evaluate the liquidation test, the Court must first determine the proper "effective date of the plan" as it pertains to a postconfirmation modification. The Code does not define this term, and the Court is not aware of any controlling authority specifically answering this question. Courts are split on whether the value is measured as of the original date of confirmation or at the time of the modification.[4] One view is that, because the Code contemplates only one plan, the original confirmation date remains the effective date for modification purposes.[5] Most courts, however, hold the opposite view—that the effective date is the date of the modification and the liquidation analysis must be reapplied as of the time of the modification.[6] The majority view is based in part on legislative history indicating that "the application of the liquidation value test must be redetermined at the time of the confirmation of the modified plan."[7]

In this Court's view, the majority approach better interprets the interaction between §§ 1329(b) and 1325(a)(4) because it gives effect to § 1325(a)(4) while also recognizing that a modified plan becomes the plan under the plain language of § 1329(b)(2). This is particularly so where, as in this District, the normal practice is that a postpetition

---

[4] *Compare In re Forbes*, 215 B.R. 183, 189 (8th Cir. BAP 1997) (holding that the effective date of the plan is not altered by a plan modification and therefore postpetition postconfirmation assets are not included in the liquidation analysis for purposes of approving a modified plan), *and In re Gibson*, 415 B.R. 735 (Bankr. D. Ariz. 2009) (holding that "the effective date of the plan" is the date of confirmation unless the plan specifies a different date), *with In re Barbosa*, 236 B.R. 540 (Bankr. D. Mass. 1999), *aff'd*, 235 F.3d 31 (1st Cir. 2000) (holding that the effective date of a modified plan for purposes of liquidation value is the date of the plan modification) *and In re Nott*, 269 B.R. 250, 255 (Bankr. M.D. Fla. 2000) (same). *See also Villegas*, 573 B.R. at 850 ("If there is an asset that comes into the estate post-confirmation, [it] must be valued as of the date of any modification motion for purposes of § 1325(a)(4) and the nonexempt value of that post-confirmation asset should be added to the previously calculated best interests of creditors number.").

[5] *See, e.g., Forbes*, 215 B.R. at 189; *Gibson*, 415 B.R. at 739.

[6] *See, e.g., In re Barbosa*, 236 B.R. at 552; *In re Auernheimer*, 437 B.R. 405, 408 (Bankr. D. Kan. 2010); *In re Moran*, No. 08-60201-RLJ-13, 2012 WL 4464492 (Bankr. N.D. Tex. Sept. 25, 2012).

[7] H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 431 (1977).

inheritance is property of the estate and vests in the bankruptcy estate, not in the debtor.[8] Further, the majority approach ensures that the plan as modified accurately reflects what creditors might hope to receive in a chapter 7 liquidation if the debtor were to convert the case to chapter 7 today. Accordingly, the Court concludes that the "effective date of the plan," as provided in § 1325(a)(4) and as referenced in § 1329(b)(1)–(2), is the date of the modification.

    b. *The best interest of the creditors test.*

The second question is whether the value of the non-exempt portion of the inheritance is included in a hypothetical liquidation, known as the best interest of the creditors test. The parties' dispute on this issue centers around the interplay between § 348(f) and § 1306. In relevant part, § 348(f) states:

> (1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title--
>
> (A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion;
>
> . . .
>
> (2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion.

11 U.S.C. § 348(f)(1)–(2).

The Trustee argues that § 1306, rather than § 348(f), should control whether an asset acquired postconfirmation is included in the hypothetical liquidation. Under the Trustee's position, the nonexempt portion of *all postpetition assets* would be automatically included in a new liquidation value at the time of modification and committed to the payment of creditors. To support his position, the Trustee cites *Villegas*.

---

[8] The Debtor's confirmed plan provides that "[p]roperty (including, but not limited to, bonuses, inheritances, tax refunds or any claim) acquired by the Debtor post-petition shall vest in the Trustee and be property of the estate." Accordingly, an analysis under § 1327(b) is inapplicable to the instant case.

In *Villegas*, the chapter 13 trustee moved to modify the debtors' confirmed plan after the debtors received a postconfirmation settlement of a postpetition personal injury claim. The court held that the value of assets in existence on the petition date are fixed "once and for all" at the time of confirmation. The court further held that, for the purposes of § 1325(a)(4), any new assets that came into the estate after confirmation are valued at the date of modification and the nonexempt value of such assets is added to the previously calculated liquidation value.

The Debtor contends that § 348(f), not § 1306, controls. The Debtor argues that in a hypothetical conversion to a chapter 7 case, the inheritance would not be distributable to creditors even if it is currently property of the estate in the chapter 13 case unless the conversion is in bad faith. To support her argument, the Debtor cites *In re Taylor*, 631 B.R. 346 (Bankr. D. Kan. 2021).

In *Taylor*, the chapter 13 trustee moved to modify the debtor's plan following the debtor's receipt of a postconfirmation settlement of a postpetition personal injury claim. The court concluded that the effective date of the plan is the date of the modification and denied the trustee's motion after concluding that the hypothetical chapter 7 estate does not include postpetition property pursuant to § 348(f). The court also noted that statutory construction supports the application of § 348(f) rather than § 1306, reasoning that § 348(f) is a specific statute defining property of the estate in a conversion whereas § 1306 is a general statute augmenting the estate defined in § 541 for chapter 13 cases.

The Court agrees with the *Taylor* court's interpretation and concludes that § 348(f), rather than § 1306, controls whether an asset acquired postconfirmation is included in the hypothetical liquidation. The purpose of the liquidation value is to provide a floor to ensure that creditors receive in a chapter 13 case at least as much as they would receive in a chapter 7 case. If § 1306 controlled, the liquidation value would be subject to constant upwards and downwards adjustments during the pendency of the case to account for any postconfirmation asset or liability acquired. Such an interpretation would substantially

interfere with a debtor's fresh start and would fail to account for any potential postconfirmation changes in a debtor's circumstances.

Further, both legislative history and caselaw support that § 348(f), rather than § 1306, controls. When Congress amended § 348(f) in 1994, it expressly overruled *Matter of Lybrook*, 951 F.2d 136 (7th Cir. 1991), which held that if the case is converted, all after-acquired property becomes part of the estate in the converted chapter 7 case, and adopted *In re Bobroff*, 766 F.2d 797 (3d Cir. 1985), which held that in a converted case, only the property the debtor had when the original chapter 13 petition was filed is property of the estate. H.R. Rep. No. 835, 103d Cong., 2d Sess. 57 (1994). Congress expressed its concern that a *Lybrook* approach would "create a serious disincentive to chapter 13 filings" because debtors would fear that property attained after filing could be lost if the case were converted. *Id.* However, Congress also clarified that its intent was to give courts discretion to order that all property held at the time of conversion is property of the estate in cases converted in bad faith. Courts have also reasoned that in adopting *Bobroff*, "Congress intended to avoid penalizing debtors for their chapter 13 efforts by placing them in the same economic position they would have occupied if they had filed chapter 7 originally." *In re Brown*, 2018 WL 2308267, at *6 (9th Cir. BAP 2018) (quoting *Wyss v. Fobber (In re Fobber)*, 256 B.R. 268, 278 (Bankr. E.D. Tenn. 2012)); *see also Warfield v. Salazar (In re Salazar)*, 465 B.R. 875 (9th Cir. BAP 2012) (holding that property acquired during the pendency of the chapter 13 case does not, absent bad faith, become property of the chapter 7 estate after conversion).

As the Court previously concluded, the date of the modification is the effective date of the plan. For the Debtor's estate to be liquidated under chapter 7 as of the effective date of the modified plan, the case would have to first undergo a conversion—which would make § 348(f) applicable. The plain language of § 348(f) provides that the property of a chapter 7 estate resulting from a good faith conversion from chapter 13 consists of property of the estate as of the date of filing of the petition that remains in the debtor's

possession or control at the time of conversion. Here, the inheritance was not property of the estate as of the date of filing of the petition. Thus, if the Debtor's case were converted to chapter 7 in good faith, unsecured creditors would not benefit from the Debtor's postpetition inheritance. Accordingly, the Court concludes that the non-exempt portion of the Debtor's inheritance is not included in a hypothetical liquidation unless the Trustee can show that such a conversion would be in bad faith.

   c. *Issues of fact exist as to whether § 348(f)(2) applies, requiring an evidentiary hearing.*

When considering dismissal or conversion of a chapter 13 case due to bad faith, courts consider the facts of the case and apply the "totality of the circumstances" test. *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999). In applying the totality of the circumstances test, courts should consider: (1) whether the debtor misrepresented facts in the petition or plan, unfairly manipulated the Code, or otherwise filed the petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor intended to defeat state court litigation; and (4) whether egregious behavior is present. *Id.* at 1223.

The Trustee alleges that the Debtor used a situation of her own creation to unfairly manipulate the Code in an attempt to receive a discharge and retain estate property by waiting until after the ACP elapsed to disclose her inheritance and then waiting until she had remitted her final payment to confirm that she had received the inheritance. The Court is aware of two previous chapter 7 cases filed by the Debtor—one in 1995, and the other in 2010—neither of which were dismissed. In both previous cases, the Debtor received a discharge. The Court is not aware of any facts suggesting that the Debtor intended to use the bankruptcy to defeat state court litigation. Finally, whether the Debtor's dilatoriness in disclosing the inheritance amounts to egregious behavior raises factual questions not squarely in the record before the Court.

Although the Trustee has presented evidence that the Debtor did not timely disclose the inheritance, the current record before the Court does not make clear that her delay amounts to unfairly manipulating the bankruptcy process to the disadvantage of creditors rather than a lack of diligence. Absent a further evidentiary hearing, the Court cannot determine that the Debtor's conduct amounts to a level of bad faith as would warrant increasing the size of the chapter 7 estate to include all of the nonexempt portion of the postpetition inheritance.

### 3. *The Debtor experienced a substantial increase in her financial condition that warrants a modification, proposed in good faith, increasing the distribution to unsecured creditors.*

In determining whether modification is warranted, the Court may in its discretion consider whether a debtor experienced a substantial and unanticipated change in her financial condition. *In re Mattson*, 468 B.R. 361, 370 (9th Cir. BAP 2012). Here, there is no suggestion that the death of the Debtor's mother was anything other than unanticipated, and the change in the Debtor's financial condition is substantial—the value of the inheritance received is approximately 1425% more than the total aggregate plan payment called for in her confirmed plan. As stated in *Carroll*, "[w]hen a [chapter 13] debtor's financial fortunes improve, the creditors should share some of the wealth." 735 F.3d at 151 (quoting *In re Arnold*, 869 F.2d 240, 243 (4th Cir. 1989)). Accordingly, based on the facts of this case, the Court finds as a matter of its discretion that the inheritance is a significant improvement in the Debtors' financial condition that warrants increasing the distribution to unsecured creditors. Consequently, the Debtor must propose a modified plan that increases the distribution to unsecured creditors that meets the good faith requirements of § 1325(a)(3).

### 4. *The modified plan length does not exceed the length permitted by § 1329(c).*

Section 1329(c) authorizes the Court to provide for payment over a period of time that expires after the applicable commitment period of § 1325(b)(1)(B) "for cause," provided

that the period does not exceed five years. The Court confirmed Debtor's plan on October 23, 2019. The 60-month period after the date of confirmation ends in October 2024. The Trustee filed this Motion before the five-year limitation of § 1329(c) expired. The Debtor was required under Rule 1007(h) to inform the Trustee immediately about the inheritance and to file a supplemental schedule. Debtor failed to perform that duty. Accordingly, the Court finds that adequate cause has been shown in the record to approve a modified plan that extends time for payment beyond the Debtor's 36-month ACP, but to no more than 60 months, pursuant to § 1329(c).

### III. Conclusion

Based on the foregoing, the Trustee's Motion to modify the Debtor's chapter 13 plan to increase distribution to unsecured creditors pursuant to § 1329(a) is allowed.

As explained above, the postconfirmation inheritance is property of the estate under § 1306. The best interest test applies to a modified plan and the effective date of the plan for calculation of the distribution to unsecured creditors in a hypothetical liquidation is the date of the modification. However, in reliance on § 348(f), the Court holds that the postpetition inheritance is not automatically included in the hypothetical liquidation calculation but will only be included upon a showing that § 348(f)(2) applies under the facts of this case.

Although the inheritance is not automatically included in the hypothetical liquidation, the Court finds as a matter of its discretion that the inheritance is a significant improvement in the Debtors' financial condition that warrants increasing the distribution to unsecured creditors. Accordingly, the Debtor is required to propose a modification that is consistent with this Memorandum Decision and increases the distribution to unsecured creditors as well as satisfies the requirements of §§ 1325(a)(3) and 1329(b)(1). The Court will address the need for the evidentiary hearing upon the filing of the modified plan and the Trustee's response to such modified plan. A separate order will be entered.

///End of Memorandum Decision///